906 P.2d 263

Nancy M. Engleman WILLIAMS (formerly Nancy Engleman White), as Personal Representative of the Estate of Marsha Maria Engleman, Deceased, and Donovan Rakestraw, as Personal Representative of the Estate of Constance Louise Rakestraw, Deceased, Plaintiffs–Appellees,

v.

Emory ASHBAUGH, Defendant–Appellant,

and

The Estate of Lupe M. Nuanes, Shane E. Kelly, R.C. Woolf, Freddie Torres, d/b/a The Pineknot, Georgia Beanblossom, d/b/a Ashbaugh's Bar, and John Does I through IV, Defendants.

No. 8980.

Court of Appeals of New Mexico.

July 24, 1986.

Martin E. Threet, Robert T. Reeback, Threet and King, Albuquerque, for defendant-appellant.

William H. Carpenter, Daymon B. Ely, Carpenter Law Office, Ltd., Albuquerque, for plaintiffs-appellees.

## OPINION

HENDLEY, Chief Judge.

Plaintiffs' decedents were killed when their car collided with a car driven by Lupe M. Nuanes. Nuanes, who was also killed, had been drinking at Ashbaugh's Nite Club and the Pineknot Bar in Truth or Consequences, New Mexico, before the accident. Emory Ashbaugh owns Ashbaugh's Nite Club and holds the liquor license under which it is operated. Georgia Beanblossom operated Ashbaugh's Nite Club under a lease from Ashbaugh and was the agent-lessee of Ash-

baugh's liquor license at the time of the accident. R.C. Woolf owns the Pineknot Bar and holds the liquor license under which it is operated. Freddie Torres operated the Pineknot Bar under a lease from Woolf and was the agent-lessee of Woolf's liquor license at the time of the accident. Ashbaugh and Woolf will be referred to as "Lessors." Beanblossom and Torres will be referred to as "Lessees."

After the accident, plaintiffs filed a wrongful death action against Lessors, Lessees and others. The complaint alleged that Lessors, as the owners of the bars and licenses, were liable for the deaths. Lessors filed a motion for summary judgment. The motion alleged that Lessors could not be vicariously liable as lessors of the liquor licenses or under any other theory. In response plaintiffs argued, among other things, that NMSA 1973, Section 60–3A–2(B) (Repl.Pamp.1981) imposed this type of liability on the lessors of liquor licenses. Based on that statute, the trial court denied Lessors' motion and granted Lessors leave to seek an interlocutory appeal. Only Ashbaugh appealed. We granted the application to appeal. The following question was certified for decision: What liability, if any, can be imputed to the lessor of a liquor license? We agree with the trial court and affirm.

Lessors argue that there is no legal basis for the imposition of this kind of vicarious liability. They argue that neither *Lopez v. Maez,* 98 N.M. 625, 651 P.2d 1269 (1982), which imposed common law dramshop liability on tavern owners, nor Section 60–3A–2(B) supports the trial court's decision in this case. They further argue that it is unfair to impose liability on them because they retained no control over the businesses and were, in fact, prevented from doing so by statute. Lessors claim that Lessees took on all of their responsibilities when they leased the liquor licenses. They also claim that, because they had no right to control Lessees and no knowledge of Nuanes' intoxication, liability should not be imputed to them.

■ Plaintiffs argue that Section 60–3A–2(B) imposes a nondelegable duty on Lessors. It is plaintiffs' position that the plain meaning of the statute supports Lessors' lia-

bility in this case. Plaintiffs also argue that, if the statute must be construed, it must be done to impose liability on Lessors because only that construction would remedy the perceived evil and be consistent with the legislative scheme of the Liquor Control Act. Plaintiffs argue that Lessors cannot avoid the impact of changes in the law by their private contracts.

Section 60–3A–2(B) is the basis of the dispute in this case. It provides that:

> It is the intent of the Liquor Control Act that each person to whom a license is issued shall be fully liable and accountable for the use of the license, including but not limited to liability for all violations of the Liquor Control Act and for all taxes charged against the license.

This section was enacted as part of the Liquor Control Act of 1981. *See generally* 1981 N.M.Laws, ch. 39. The Act substantially changed this state's liquor laws.

Prior to the 1981 Act, all liquor licenses were assignable. The state's liquor policy did not include a provision like 60–3A–2(B). The Act adopted in 1981 prohibited the transfer of licenses. *See* § 60–6B–3. It also included, for the first time, the provision which is in dispute in this case. *See* § 60–3A–2(B). Although the 1981 Act prohibited the transfer of licenses, it also contained a grandfather provision. Section 60–6A–19 provided that:

> The holder of any license issued under ... any former act has no vested property right in the license ... provided that until June 30, 1991, licenses issued prior to the effective date of the Liquor Control Act shall be considered property subject to ... all ... incidents of tangible personal property under the laws of this state....

Thus, although leasing was prohibited by the Act, it contained an exception in Section 60–6A–19 which was applicable to the Lessors in this case.

The liquor control policy contained in Section 60–3A–2(B) was adopted at the same time as the exception in Section 60–6A–19. There is no reason to suppose that the policy does not apply to those persons who fall within the exception. The Legislature failed

to insert any language in the statute which would give rise to a special exemption from the policy for preexisting license holders. The 1981 Act created a new policy for all license holders. We assume that the Legislature knew what it was doing when it enacted the 1981 Liquor Control Act, knew what the prior law was, and knew that it was changing it. *See State ex rel. Bird v. Apodaca,* 91 N.M. 279, 573 P.2d 213 (1977); *State v. Trivitt,* 89 N.M. 162, 548 P.2d 442 (1976); and *Carper v. Board of County Commissioners of Eddy County,* 57 N.M. 137, 255 P.2d 673 (1953). The legislative scheme placed greater restrictions on liquor license holders. Apart from the exception enumerated in Section 60–6A–19, which does not touch on liability, those restrictions apply to all license holders in New Mexico. The statute must be construed as written, and this Court may not read into the Act language which is not there. *Westgate Families v. County Clerk of the Incorporated County of Los Alamos,* 100 N.M. 146, 667 P.2d 453 (1983). In this case, this Court cannot make lessors exempt from the legislative policies of the Act when the Legislature failed to do so.

Thus, the policy adopted by the Legislature in 1981 is applicable to Lessors in this case. We must next determine what the policy means and whether it must be construed to effect the legislative intent.

In construing a statute, this Court's primary concern is to give effect to the Legislature's intent. *Smith Machinery Corp. v. Hesston, Inc.,* 102 N.M. 245, 694 P.2d 501 (1985). The intent of the Legislature is determined from the language which is used in the statute. *See Atencio v. Board of Education of Penasco Independent School District No. 4,* 99 N.M. 168, 655 P.2d 1012 (1982). If the words used are unambiguous, and the pertinent sections read together do not create an ambiguity or an absurd result, this Court will not construe a statute to mean something other than what it plainly says. *See Atencio; Methola v. County of Eddy,* 95 N.M. 329, 622 P.2d 234 (1980); and *State v. Ortega,* 77 N.M. 312, 422 P.2d 353 (1966).

In this case, Section 60–3A–2(B) is clear on its face and needs no interpretation. It holds "each person to whom a license is issued ... fully liable and accountable for the use of the license, including ... liability for all violations of the Liquor Control Act...." Lessors are persons to whom licenses were issued. A violation of the Liquor Control Act, Section 60–7A–16, has been alleged. The statute is applicable to Lessors in this case, and they are liable under its terms if a Liquor Control Act violation is proved by plaintiffs. There is no room for a construction of the statute which would allow us to hold otherwise. We need not resort to extrinsic methods of construction.

The trial court correctly denied Lessors' motion for summary judgment. Lessors are not entitled to judgment as a matter of law, and there is at least one disputed question of fact: whether Lupe M. Nuanes was served alcohol when she was obviously intoxicated. The trial court's denial of the motion was proper. *Jeffers v. Doel,* 99 N.M. 351, 658 P.2d 426 (1982); *Phillips v. United Service Automobile Association,* 91 N.M. 325, 573 P.2d 680 (Ct.App.1977). We, therefore, affirm.

Lessors argue that applying Section 60–3A–2(B) to them is unfair. Their argument is unconvincing for several reasons. As we have seen, part of the purpose of the 1981 Liquor Control Act was to tighten this state's liquor control laws. The policy set forth in Section 60–3A–2(B) imposes liability on liquor licensees and makes no exception for those who are "merely" lessors.

It is unnecessary to reiterate here the statistics relating to alcohol-related accidents and fatalities. *See Lopez v. Maez.* The problem is massive and is not subject to quick solutions. The Legislature, by adopting the policy complained of in this case, has created a partial solution. It has put greater controls on all persons involved in the liquor industry in this state. The Legislature may choose this form of social control. Selling liquor is a privilege, not a right. *Nelson v. Naranjo,* 74 N.M. 502, 395 P.2d 228 (1964); *Yarbrough v. Montoya,* 54 N.M. 91, 214 P.2d 769 (1950). The privilege may be curtailed to promote a permissible legislative purpose. *State ex rel. Maloney v. Sierra,* 82 N.M. 125, 477 P.2d 301 (1970). That is what has been

done in this case. For us to hold otherwise would frustrate the legislative scheme imposed by the 1981 Act. We will not do that. Assuming the existence of any unfairness, this is a situation which calls for legislative therapy and not judicial surgery.

We affirm.

IT IS SO ORDERED.

MINZNER and GARCIA, JJ., concur.